UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| *In re* | ) | |
| | ) | |
| B.K.V. Inc., d/b/a Tello's | ) | Chapter 11 |
| | ) | Case No. 10-12855 |
| Debtors. | ) | |

### 395 LYNNWAY LLC'S OPPOSITION TO DEBTOR'S MOTION TO REJECT LEASE AND ITS CROSS-MOTION TO DISMISS BANKRUPTCY PETITION

Creditor 395 Lynnway LLC ("Lynnway") hereby opposes the Motion to Reject Non-Residential Lease and cross-moves to dismiss the bankruptcy petition filed by Debtor B.K.V. Inc. d/b/a Tello's ("BKV").

### INTRODUCTION

Over the course of the last year, Lynnway has attempted in good faith to work with BKV in order to collect from it the money owed to Lynnway under the terms of the parties' commercial lease. BKV, however, forced Lynnway to file a state court action and obtain a court order: (a) prohibiting BKV from transferring any of its assets outside the normal course of business; and (b) providing Lynnway with a monthly accounting to track compliance with this order. BKV failed to comply with the Court order and, as a result, Lynnway was forced to file a complaint for contempt. In response, and in an effort to forestall its liability, BKV represented that it would pay certain amounts to Lynnway in monthly installments, provided Lynnway with a post-dated check, and represented that it would have sufficient funds to continue with its monthly obligations. Lynnway relied on BKV's representations. However, on Friday, March

19, 2010, without providing any notice to Lynnway, BKV filed for bankruptcy under Chapter 11 and requested an expedited hearing on its motion to reject Lynnway's lease.

BKV's conduct has already significantly prejudiced Lynnway. Now, with the filing of this bankruptcy petition, BKV continues to engage in a pattern and practice of improper conduct designed to avoid its obligations to Lynnway for the benefit of BKV and its principals' family members. In fact, the one and only creditor that will benefit from this filing is A.J. Financial, Inc., the only secured creditor and, not coincidentally, an entity owned, upon information and belief, by the mother of BKV's president. Since this petition was filed in bad faith, Lynnway respectfully requests that the Court deny BKV's motion to reject the lease and allow its motion to dismiss the bankruptcy petition.

## FACTUAL BACKGROUND

### *BKV's Failure to Pay Rent Owed To Lynnway*

Lynnway owns and operates a parcel of commercial property located at 395 Lynnway, Lynn, Massachusetts. On September 8, 2006, BKV entered into a lease with Lynnway under which it leased approximately 7,390 square feet of commercial space for a period of ten years, consisting of two five-year options (the "Lease"). *See State Court Verified Complaint ("Ver. Cmpt.")*, ¶ 8, a copy of which is attached hereto as **Exhibit A**. The Lease provided, among other things, that BKV "shall pay [rent]…to landlord in lawful money, without prior demand and without any offset or deduction whatsoever, in advance on the first day of each calendar month during the Term of this Lease;" pay minimum rent of $17,243.34 for the first two years (2006 – 2007); $19,706.67 for the third year (2008); and $20,938.34 for the fourth year; and pay its "proportionate share of costs," including common area maintenance, real estate taxes, and shopping center insurance" ("Additional Rent"). *Ver. Cmpt.*, ¶ 9. The Lease also contained

typical commercial provisions related to rent, use and occupancy and termination.  In particular, the Lease:

(a) provided that BKV "shall be in default" if it "fails to pay any Minimum, Additional Rent or other sum required under this Lease within ten (10) days after receipt of written notice for Landlord that such amount is due."; and

(b) allowed Lynnway to terminate the Lease after 10 days written notice of default and recover from BKV "all costs (including reasonable attorneys' fees and legal expenses) and other damages incurred by Landlord as a result of such default."

*Ver. Cmpt.*, ¶ 10.

From almost the inception of the Lease, BKV failed to pay the full rent required.  Rather, it paid an amount significantly less than the Minimum Rent required under the Lease, failed to include Additional Rent, and failed to include construction costs.  *Id.*, ¶ 11.  BKV subsequently acknowledged that it was overdue for the past "7 months", but failed and refused to pay the balance it admitted was due and owing to Lynnway.  *Id.*, ¶¶ 12-13.

On October 30, 2008, BKV's two principals, Kirk Vitello and Angelo ("Andy") Vitello, acknowledged that their company owed rent, requested "major relief" in the form of reduced rental payments, and specifically represented to the manager and operator of Lynnway, Ralph Sevinor ("Sevinor"), that all outstanding rent would be paid.  *Id.*, ¶ 14.  In particular, Andy Vitello represented that he realized that he owed rent to Lynnway, that he was not trying to avoid his obligations under the Lease, that he needed some additional time to work with his finance company, and that he would pay all of the money due under the Lease.  *Id.*, ¶ 15.

In reliance upon the Vitellos' representations, Lynnway agreed to forbear on its rights under the Lease and to provide "rent relief from paying full rent and CAM charges through 12/31/08."  *Id.*, ¶ 16.  Notwithstanding Lynnway's forbearance, neither the president, Kirk Vitello, nor its treasurer, Andy Vitello, paid the outstanding rent.  *Id.*, ¶ 17.

In or around June 2009, Andy Vitello represented that BKV had insufficient funds to pay the rent in full, and would shut down its operation if Lynnway attempted to enforce its rights under the Lease. *Id.*, ¶ 18. Lynnway subsequently provided a written Notification of Default and a fourteen day Notice to Quit. *Id.*, ¶ 19. BKV failed to pay any amounts to Lynnway.

## *The State Court Litigation*

As a result, on December 17, 2009, Lynnway filed a Verified Complaint in Suffolk Superior Court, Civil Action No. 09-5349, seeking to collect BKV's overdue rent. Lynnway requested an injunction preventing BKV from transferring assets other than in the ordinary course of business. To determine BKV's ordinary business expenses, it also requested that the Court require BKV to produce its financial records and update these records every thirty days.

On December 23, 2009, the Court issued the injunction requested by Lynnway. *See December 23, 2009 Order*, a true and accurate copy of which is attached hereto as **Exhibit B**. In particular, the injunction required, among other things, that

- BKV be preliminary enjoined from transferring assets other than in the ordinary course of business; and

- BKV produce to "Lynnway and the Court, a full accounting identifying its income, costs, expenses, salaries, gross and net revenue" within 5 business days of the Order and "every thirty (30) days thereafter until further order of the Court"

*Id.*

On January 7, 2010, BKV produced a "summary" sheet of the financial information the Court ordered BKV to produce (the "Summary Sheet").[1] The Summary Sheet failed to provide any specifics required to determine the business expenses of BKV, the salaries received by its principals, or the company's profit. Rather, it merely provided lump sum numbers for all of the stores. Lynnway therefore requested more detailed financial information. In response, BKV

---

[1] The Summary Sheet was marked "confidential" and is available to the Court upon request.

1079203.1                                                   4

produced a more detailed financial report. However, this report appeared to be outdated (reflecting revenues from September 2008 to September 2009) and omits the specific salaries of BKV's employees and principals, and the company's current revenues.

Thereafter, Lynnway made several requests for additional more detailed and updated financials. Notwithstanding these requests, BKV has failed and refused to produce these documents.

After the hearing on Lynnway's Application for Preliminary Injunction, Sevinor was approached by Andy Vitello who represented that he and BKV intended to pay all of the back rent owed to Lynnway. *See Affidavit of Ralph Sevinor ("Sevinor Aff.")*, ¶ 2, a true and accurate copy of which is attached hereto as **Exhibit C**. Vitello suggested that BKV make payments of $25,000 per month with the intent that the extra rent be applied to their arrearage. *Id.* Lynnway accepted BKV's proposal, but BKV failed to make even the first monthly payment in full. *Id.*

By February 1, 2010, Lynnway had not received any additional rent from BKV. *Id.*, ¶ 3. After making several phone calls, Sevinor finally spoke with Andy Vitello and requested a meeting in order to resolve the outstanding rent due and owing to Lynnway. *Id.*, ¶¶ 4-5. The parties met on February 15, 2010. *Id.*, ¶ 5. At this meeting, the Vitellos displayed a partially completed bankruptcy petition which identified BKV as the debtor. *Id.*, ¶ 6. During this meeting, the Vitellos represented that:

- they were instructed by their attorney not to communicate with any of their creditors including Lynnway;

- they had no intention of paying Lynnway the back rent (approximately $300,000) and believed that they have no obligation of paying the full rent under the Lease;

- they were contemplating bankruptcy but did not want to pay their attorney $150,000 retainer requested; and

1079203.1                                                5

- the financials provided to their attorney for the purposes of filing bankruptcy had "plenty of cushion," i.e. were exaggerated to show a greater loss than they had actually incurred.

*Id.*, ¶ 7. Kirk Vitello further represented to Sevinor that even with these exaggerated financials, they were instructed to "massage" the numbers to show a greater loss for the purposes of filing bankruptcy. *Id.*, ¶ 8. Additionally, Andy Vitello represented to Sevinor that he would not make any further payments of the promised $25,000 per month but rather would only pay $15,000 per month and that Sevinor either accept this amount or BKV would declare bankruptcy. *Id.*, ¶ 9. Kirk Vitello represented that "maybe every six months we could pay you an additional $1,000 per month." *Id.*

The following week, Lynnway received a check for $12,000. *Id.*, ¶ 10; *Check*, a true and accurate copy of which is attached hereto as **Exhibit D**. This check, however, was approximately $8,000 less than the rent owed under the Lease. Furthermore, it was post-dated to late March 24, 2010. *Check.*

*Lynnway Files a Contempt Complaint and Requests A Trustee Process*

As a result of BKV's actions and its clear intent to delay the litigation, on March 1, 2010, Lynnway filed a Contempt Complaint and Emergency Motion for Trustee Process. *See Contempt Complaint* and *Emergency Motion for Trustee Process*, true and accurate copies of which are attached hereto as **Exhibit E** and **Exhibit F**, respectively. The hearing was originally scheduled for March 25, 2010.

On March 19, 2010, just prior to the date on which the check for rent was to clear and on the eve of the trustee process hearing date, BKV filed this bankruptcy petition (Doc. 1). Lynnway is identified as the largest unsecured creditor. The one and only secured creditor identified by BKV is an entity called A.J. Financial, Inc. ("AJF"), whose sole shareholder and

officer is one D. June Vitello. *See Secretary of State Filings*, attached hereto as **Exhibit G**. D. June Vitello is identified as the mother of Kirk Vitello, and upon information and belief, is the wife of Andy Vitello.

## ARGUMENT

**I.    The Debtors Cannot Establish Good Faith in Filing the Chapter 11 Petition.**

Section 1112(b) of the Bankrupcty Code provides that a bankruptcy petition may be dismissed for "cause." 11 U.S.C. § 1112(b). While Chapter 11 does not expressly condition the right to file or maintain a proceeding on the "good faith" of the debtor in initiating the proceeding, "courts have defined 'cause' broadly to include a lack of good faith. . . ." In re Bryan, 104 B.R. 554, 557 (Bankr. D. Mass. 1989), citing In re Albany Partners, Ltd., 749 F.2d 670, 674 (11th Cir. 1984). In fact, the majority of courts have recognized that "[g]ood faith is an operative, if not express condition to the filing of a Chapter 11 petition" in order to preserve the integrity of the bankruptcy system and to prevent abuses. In re U.S. Advertising, Inc., 131 B.R. 537, 540 (Bankr. D.R.I. 1991); In re Weber, 209 B.R. 793, 801 (Bankr. D.Mass. 1997). Therefore, a bankruptcy petition filed in bad faith warrants dismissal under § 1112(b). In re Weber, 209 B.R. at 800 (lack of good faith constitutes cause for dismissal under to § 1112(b)); see also 1500 Mineral Spring Associates v. Gencarelli, 353 B.R. 771, 781 (Bankr. D.R.I. 2006) (it is well established that a lack of "good faith" constitutes cause for dismissal); In re SGL Carbon Corp., 200 F.3d 154, 160-61 (3d Cir. 1999) (holding that "absence of good faith constitutes 'cause' to dismiss a Chapter 11 petition under § 1112(b)"). Massachusetts is in accord. See In re Somerset Capital Corp., 264 B.R. 788 (Bankr. D. Mass. 2001) (dismissing debtor's voluntary Chapter 11 petition because the petition was filed in "bad faith"); In re

1079203.1                                      7

Harvey Probber, Inc., 44 B.R. 647 (Bankr. D.Mass. 1984) (dismissing debtors' Chapter 11 petition because petition was filed in bad faith).

If a creditor challenges the debtor's motivations, the burden rests with the debtor to prove that it is seeking the protection of the bankruptcy courts in good faith. See In re SGL Carbon Corp., 200 F.3d at 162 ("Once [bad faith] at issue, the burden falls upon the bankruptcy petitioner to establish that the petition has been filed in 'good faith'"); see also In re Harvey Probber, Inc., 44 B.R. at 650 (debtor had burden of proving good faith); 7 Collier on Bankruptcy at 1112-53 ("[I]f the issue is whether the petition was filed in good faith, the burden rests on the petitioner.").

Whether a petition has been filed in good faith is determined by considering the totality of the circumstances. In re Weber, 209 B.R. at 801; see also In re U.S. Advertising, Inc., 131 B.R. at 54 (courts consider the totality of the circumstances in determining bad faith). Among the factors courts consider in finding bad faith, which are particularly applicable here, are the following: (1) the pre-petition conduct of the debtor has been improper; (2) the petition effectively allows the debtor to evade court orders; (3) the petition was on the eve of foreclosure; and; (4) the debtor filed solely to take advantage of the automatic stay. In re Bryan, 104 B.R. at 558 (citing In re Wentworth, 83 B.R. 705, 707 (Bankr. D.N.D. 1998) and In re Little Creek Development Co., 779 F.2d 1068, 1072-73 (5th Cir. 1986)). Courts also consider whether there is pre-petition litigation already pending in the state court between the parties. In re Serfass, 325 B.R. 901, 905-06 (Bankr. M.D.Fla. 2005).

BKV cannot demonstrate good faith in filing this petition. Despite Lynnway's good faith attempts to negotiate and work with BKV, BKV engaged in a pattern of wrongful conduct in an

attempt to avoid its obligations to pay amounts due prior to and during the pendency of the state court litigation. Prior to the litigation, BKV:

- acknowledged its failure to pay full rent due for 7 months but refused to pay the balance admittedly owed;

- induced Lynnway to forebear on its rights under the Lease and provide rent relief by making false representations that it would pay the amounts due; and

- stated that it had insufficient funds to pay the rent in full and threatened to shut down operations if Lynnway attempted to enforce its rights under the lease.

BKV's improper conduct not only forced Lynnway to take action to enforce its rights, but increased after Lynnway filed the state court action in December 2009. BKV failed to comply with a court order requiring a full accounting, induced Lynnway into accepting a reduced payment, and even after Lynnway agreed to work with them, threatened Lynnway with bankruptcy if it did not agree to accept even less. Even when it did provide some form of payment, it deliberately post-dated a check and caused Lynnway to wait patiently for that day to arrive. Then, days before this check was supposed to clear and on the eve of the state court's hearing on Lynnway's motion for trustee process,[2] BKV – with no notice to Lynnway – filed for bankruptcy petition and filed an emergency motion to reject Lynnway's lease.

By filing the petition, BKV attempts to evade the Court's order prohibiting it from transferring funds (i.e., by seeking to use money which should be segregated for its creditors to fund the retainer for its bankruptcy attorney) and avoiding the imminent payment of the $15,000 owed on a check it already issued. From the facts and circumstances surrounding the history of BKV's conduct, it is clear that the debtor is simply attempting to avoid its debt to Lynnway and its obligation to defend the litigation that previously commenced in state court. See 1500

---

[2] On March 18, 2010 the hearing was rescheduled to April 20, 2010 at the request of Lynnway's counsel due to an emergency. The debtors filed their petition on March 19, 2010 at approximately 1:30 p.m. Presumably, the debtors' petition was prepared before the hearing was rescheduled.

1079203.1                                    9

Mineral Spring Associates, 353 B.R. at 781 ("Chapter 11 may not be used to frustrate or delay the efforts of creditors to collect legitimate debts."); In re Serfass, 325 B.R. at 905-06 ("Generally, courts do not condone the use of Chapter 11 to resolve two party disputes when such litigation is still pending in a non-bankruptcy forum prior to the commencement of the case."). This is particularly true where, as here, there is only one secured creditor and that creditor just happens to be an entity owned, upon information and belief, by the mother of the BKV's president and the wife of its treasurer. BKV's conduct in attempting to avoid its debt to Lynnway for the benefit of Ms. Vitello shows a lack of good faith in filing this bankruptcy petition, and warrants dismissal.

II.    **The Court Should Deny BKV's Motion to Reject Lease. In the Alternative, the Court Should Delay Ruling On This Motion Until A Further Evidentiary Hearing Can Be Conducted.**

A debtor's right to reject a non-residential lease is not absolute. A court can deny a request to reject a lease where that rejection is based on bad faith. See In re Pomona Valley Medical Group, Inc., 476 F.3d 665 (9th Cir. 2007); In re Prime Motor Inns, 124 B.R. 378 (Bankr. S.D.Fla. 1991). For the reasons set forth above, Lynnway respectfully requests that the Court deny BKV's motion to reject its lease. In the alternative, it requests that the Court delay ruling on this motion until such time as a further evidentiary hearing can occur. This motion was filed on an emergency basis and provided Lynnway with less than two business days to first discover, and then oppose, this motion. It has raised sufficient grounds to challenge BKV's motivation, and should be entitled to a further opportunity to demonstrate that this petition and motion were filed in bad faith. Accordingly, Lynnway respectfully requests that, at the very least, the Court delay ruling on BKV's motion until such time as the Court can conduct a further evidentiary hearing.

**CONCLUSION**

For the foregoing reasons, BKV's petition should be dismissed and its motion to reject lease should be denied. In the alternative, the Court should delay ruling on BKV's motion until such time as the Court can conduct a further evidentiary hearing on the issue of whether this petition and motion were filed in good faith.

|  |  |
|---|---|
|  | 395 LYNNWAY LLC,<br>By its attorneys<br><br>*/s/ Joseph P. Calandrelli*<br>Richard E. Briansky, BBO# 632709<br>rbriansky@princelobel.com<br>Joseph P. Calandrelli, BBO# 666128<br>jcalandrelli@princelobel.com<br>**PRINCE, LOBEL, GLOVSKY & TYE LLP**<br>100 Cambridge Street, Suite 2200<br>Boston, MA 02114 |
| Dated: March 23, 2010 | Tel: 617.456.8000 |

**CERTIFICATE OF SERVICE**

I hereby certify that on March 23, 2010, a copy of the above and foregoing was electronically filed with the Clerk of Court using the CM/ECF system and that same will be served on counsel of record through the CM/ECF system:

*/s/ Joseph P. Calandrelli*
Joseph P. Calandrelli

1079203.1                                          11